**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| AMAZON.COM, INC., a Delaware Corporation,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>SPREADYOURADS GMBH, a German limited liability company; OMALA INTERNET SOLUTIONS, LLC, a Texas limited liability company; JOS JONGEJAN, an individual; and MICHAEL OSTERRIEDER, an individual,<br><br>　　　　　　Defendants. | Case No. |

## <u>COMPLAINT</u>

### I.    INTRODUCTION

1.    Amazon.com, Inc. is one of the most well-known and trusted brands in the world.

2.    Defendants SpreadyourAds GmbH, Omala Internet Solutions, LLC, Michael Osterrieder, and Jos Jongejan together operate an online advertising scheme that employs fraudulent Amazon-branded "survey" websites to generate traffic to sell to online advertisers.

1

3.     The fraudulent scheme begins with the victims' receipt of emails or SMS messages sent by affiliate marketers, which are companies and individuals hired to generate traffic for Defendants' survey websites.

4.     These communications often contain Amazon's trademarks and are designed to appear as though they were sent by Amazon, luring victims to click on a link that directs them to Defendants' survey page.

5.     When victims click on this link, they are redirected through a series of domains to the Defendants' survey website.  Defendants' survey greets victims as "Amazon Shoppers," uses Amazon's trademarks to deceive victims about the survey's origin, and promises victims "reward offers" in exchange for their participation.

6.     After answering questions related to Amazon and its business, Defendants refer victims to other websites to claim their "reward offers." However, no "reward" or "offer" exists.  Instead, Defendants sell the victims' traffic to affiliate networks, which direct victims to advertisers' websites where victims can purchase products that have no affiliation with Amazon.

7.     Amazon brings this lawsuit to hold Defendants accountable for their fraudulent scheme, which capitalizes on Amazon's brand to take advantage of unwitting victims.

## II.   PARTIES

8.     Amazon is a Delaware corporation with its principal place of business in Seattle, Washington.  Through its subsidiaries, Amazon owns and operates the Amazon.com website and equivalent international websites.

9.     SpreadyourAds GmbH is a German limited liability company and, on information and belief, has its principal place of business in Baeinfurt, Germany. SpreadyourAds is directly liable to Amazon for the damages alleged in this Complaint, or alternatively, is secondarily liable to Amazon for these damages under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory liability.

10.     Omala Internet Solutions, LLC, is a Texas limited liability company and has its principal place of business in Sugarland, Texas.  Omala Internet Solutions is directly liable to Amazon for the damages alleged in this Complaint, or alternatively, is secondarily liable to Amazon for these damages under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory liability.

11.     Michael Osterrieder is an individual who resides in Germany and owns SpreadyourAds GmbH.  Osterrieder owned, operated, and financially benefitted from the unlawful scheme that made fraudulent use of Amazon's brand

and deceived Amazon's customers.  Osterrieder is directly liable to Amazon for the damages alleged in this Complaint.  Alternatively, Osterrieder had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct.  As such, Osterrieder is subject to liability for the wrongful conduct alleged herein under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

12.     Jos Jongejan is an individual who resides in Sugarland, Texas and owns Omala Internet Solutions, LLC.  Jongejan owned, operated, and financially benefitted from the unlawful scheme that abused Amazon's brand and harmed Amazon's customers.  Jongejan is directly liable to Amazon for the damages alleged in this Complaint.  Alternatively, Jongejan had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct.  As such, Jongejan is subject to liability for the wrongful conduct alleged herein under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

## III.   JURISDICTION AND VENUE

13.    The Court has subject matter jurisdiction over Amazon's claims for trademark infringement (15 U.S.C. § 1114), violations of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and trademark dilution (15 U.S.C. § 1125(c)) pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

14.    The Court has general personal jurisdiction over Jongejan and Omala Internet Solutions, LLC, because, on information and belief, they are residents in this District.  Alternatively, the Court has specific personal jurisdiction of Jongejan and Omala Internet Solutions because they transacted business and committed tortious acts within this District, and Amazon's claims arise from those activities.

15.    The Court has specific personal jurisdiction over Osterrieder and SpreadyourAds GmbH because they transacted business and directed the commission of tortious acts within this District, and Amazon's claims arise from those activities.  Alternatively, the Court has specific personal jurisdiction over Osterrieder and SpreadyourAds GmbH because neither is subject to general jurisdiction in any state's court, they transacted business and directed the commission of tortious acts within the United States, and Amazon's claims arise under federal law.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, on information and belief, Jongejan and Omala Internet Solutions are residents of the Southern District of Texas, Osterrieder and SpreadyourAds are not residents of any state, and a substantial part of the events giving rise to the claims occurred in this district.

## IV.   FACTS

### A.     Amazon is a Trusted Brand

17.     Amazon is a highly-trusted brand, recognized by millions of consumers throughout the world who use Amazon's online stores to conveniently purchase a wide array of products and services.

18.     In connection with its online stores, Amazon offers gift cards, promotions, and a variety of services.  One of Amazon's most popular offerings is Prime, which is a paid membership program that provides discounts on shipping and free access to digital content (to name just two of Prime's features).

19.     Amazon sends customers emails in connection with its products and services.  As a result, Amazon's customers have come to expect to receive email communications from Amazon, to use Amazon's services online, and to interact with Amazon online.

20.     Amazon's products and services are readily identifiable to consumers around the world because of the company's substantial and years-long investment of time, money, and other resources in Amazon's brand, including the development of valuable intellectual property.

21.     Amazon exclusively owns numerous U.S. trademark registrations and pending applications.  These trademarks are a critical component of a consumer's ability to readily identify Amazon products and services.

22.     As alleged in this Complaint, the following trademarks and service marks (collectively "Amazon Trademarks") were unlawfully used to further Defendants' scheme:

| **Mark** | **Registration No. (International Classes)** |
|---|---|
| AMAZON | 2,657,226 (Int. Cl. 42) <br> 2,738,837 (Int. Cl. 38) <br> 2,738,838 (Int. Cl. 39) <br> 2,832,943 (Int. Cl. 35) <br> 2,857,590 (Int. Cl. 9) <br> 3,868,195 (Int. Cl. 45) <br> 4,171,964 (Int. Cl. 9) <br> 4,533,716 (Int. Cl. 2) <br> 4,656,529 (Int. Cl. 18) <br> 4,907,371 (Int. Cls. 35, 41, 42) <br> 5,102,687 (Int. Cl. 18) <br> 5,281,455 (Int. Cl. 36) |

| | |
|---|---|
| **amazon** | 4,171,965 (Int. Cl. 9)<br>5,038,752 (Int. Cl. 25) |
| AMAZON.COM | 2,078,496 (Int. Cl. 42)<br>2,167,345 (Int. Cl. 35)<br>2,559,936 (Int. Cl. 35, 36, 42)<br>2,633,281 (Int. Cl. 38)<br>2,837,138 (Int. Cl. 35)<br>2,903,561 (Int. Cls. 18, 28)<br>3,411,872 (Int. Cl. 36)<br>4,608,470 (Int. Cl. 45) |
| ECHO | 5,470,187 (Int. Cls. 9, 42)<br>5,469,992 (Int. Cls. 9, 38, 41, 42) |
| KINDLE | 3,694,267 (Int. Cls. 9, 38, 41)<br>4,289,293 (Int. Cl. 45)<br>4,380,471 (Int. Cls. 9, 35, 42)<br>4,932,736 (Int. Cls. 9, 35, 38, 41, 42, 45)<br>5,054,865 (Int. Cl. 36)<br>5,146,885 (Int. Cl. 37) |
| PRIME | 5,218,535 (Int. Cl. 35)<br>5,489,315 (Int. Cl. 42)<br>5,218,536 (Int. Cl. 41) |

23.     The Amazon Trademarks have been used exclusively and continuously by Amazon, and have never been abandoned.  The above U.S. registrations for the Amazon Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations

8

for the Amazon Trademarks constitute prima facie evidence of their validity and of Amazon's exclusive right to use the Amazon Trademarks pursuant to 15 U.S.C. § 1057(b).

### B.    Affiliate Marketing Abuse

24.    A successful website requires internet "traffic," which is a term used to describe online visits to the website.  Website traffic is akin to customers shopping at physical retail stores.  Just as brick-and-mortar stores need foot traffic to generate sales, websites need to traffic in order to monetize the website through sales and advertising revenues.

25.    Affiliate marketing arose from the need to source relevant traffic for websites.  Broadly speaking, an affiliate publishes material to generate traffic on behalf of an advertiser (i.e., the party who wants the traffic for their website).

26.    An affiliate can source traffic through a variety of means, including email campaigns, SMS (text) messages, and websites that prompt users to click through, such as online surveys.

27.    The demand for traffic has spurred the growth of businesses that help connect affiliates and advertisers.  One example of this is an affiliate network, which generally acts as an intermediary between the advertiser and the affiliates.

In this model, an advertiser approaches a single network, who then contracts with one or more affiliates to provide traffic for the advertiser.

28.     Affiliates use domains designed to redirect online consumers to another domain.  These redirect domains do not render content (such as a webpage of their own) and instead, are generally invisible to consumers.  When people click on links in an affiliate's email or webpage, they see only the final landing page, even though they may have passed through multiple redirect domains along the way.

29.     In one common form of affiliate abuse, affiliates generate traffic by impersonating well-known brands such as Amazon.  Affiliates exploit the brand's recognition with customers to entice people to click through to a third-party advertiser's website, often based on false promises of a reward or gift.  The affiliate is then paid for this fraudulent traffic.

30.     The generation of traffic through the misuse of a brand's intellectual property harms the people who are deceived by the affiliate's message or website, the brands whose intellectual property is damaged by these fraudulent campaigns, and the end advertiser who ultimately pays for the traffic.

### C.    Defendants' Unlawful Affiliate Marketing Scheme

31.    Defendants are engaged in a widespread, fraudulent marketing scheme that abuses Amazon's brand to generate traffic.  Defendants profit from the scheme by selling this fraudulently-generated traffic to affiliate marketing networks, which in turn sell the traffic to advertisers.

32.    As explained below, Defendants' scheme involves four main stages. First, victims receive emails sent by affiliate marketers that use Amazon's brand to lure them to click a link in the messages.  Second, the affiliate marketers redirect traffic from these messages to affiliate networks, which then direct those consumers to Defendants' website.  Third, Defendants use the Amazon Trademarks and false statements to deceive their victims into clicking through their fake survey website.  Fourth, Defendants monetize this scheme by selling traffic from their "survey" to other affiliate networks, which then direct victims to advertisers' websites.

### 1.    Victims Receive Phony Emails and SMS Messages that Often Use Amazon's Trademarks

33.    To source traffic, affiliate marketers send unauthorized emails and SMS messages that often display Amazon's trademarks and make false statements

11

that deceive victims into believing the messages are affiliated with Amazon.  The purpose of the messages is to entice victims to click on a link in the message.

34.     One of the emailers who generated traffic as part of Defendants' scheme was an affiliate marketing company called Sendwell, Inc.  A partial screenshot of one of Sendwell, Inc.'s emails is below:



35.     Links in emails such as the one above directed traffic to affiliate networks, which in turn, directed traffic to Defendants' website.

36.     The affiliate marketers' emails are designed to appear as though they originate with Amazon.  The email addresses displayed to victims use the Amazon Trademarks, and the emails contain misleading subject lines, such as "Add more to

your cart with an extra hundred from your friends at Amazon" and "Amazon has a surprise for you!"

37.     To further entice victims to click the links in these emails, the emails often display large stylized Amazon marks on purported Amazon gift cards, with "$100" emblazoned in large font and a link that reads, "Unlock Your Bonus Here." The affiliate marketers and Defendants do not offer victims a "bonus" or Amazon gift card, and the victims receive no "reward" for clicking the link.

38.     These Amazon-branded emails are not approved by or affiliated with Amazon.

### 2.     Affiliate Marketers Refer Victims to Affiliate Networks, Which Then Refer Victims to Defendants' Website

39.     When a victim clicks the link contained in the affiliate marketer's message, the affiliate marketer redirects the victim to a domain controlled by an affiliate network.  The affiliate network's domain does not render content in the victim's browser, but serves to redirect traffic.

40.     Affiliate networks that received traffic from the Amazon-branded messages include Traffic Goats, LLC; Flex Marketing Group; Popular Marketing, LLC; and Hastraffic.com.

41.     The affiliate networks receiving traffic from the Amazon-branded messages redirect victims to websites controlled by Defendants.

42.     Traffic Goats and Popular Marketing identified SpreadyourAds as the entity who received traffic from emails in this scheme.

43.     On information and belief, Defendants paid the affiliate networks for the referred victims' traffic pursuant to contracts between Defendants and the affiliate networks.

### 3.     Defendants Deceive Victims into Clicking Through a "Survey" By Using Amazon's Brand

44.     Defendants use at least one domain, loadzucchetto.com, to receive traffic from affiliate networks.  Like the affiliate network domains, this domain does not render content in the victim's browser, but serves to redirect traffic and collect data.

45.     Defendants' domain loadzucchetto.com is connected to tracking services from ThriveTracker.  The ThriveTracker account affiliated with loadzuchetto.com is registered to Osterrieder and SpreadyourAds.  Activity on this account was traced to two Houston IP addresses affiliated with Omala Internet Solutions and Jongejan—meaning Jongejan was actively using the account that facilitated the scheme at issue.  Once referred through the various redirect domains, the victim arrives on Defendants' survey page.  At the time of Amazon's investigation, Defendants rendered the website at tadomin.com (though Defendants likely used other domains as well).  A true and correct screenshot of one version of

Defendants' survey page is attached to this Complaint as Exhibit 1.  This survey page was hosted by Mean Servers under an account registered to the email address ost_michael@yahoo.de, which is connected to Osterrieder.

46.     Communications amongst Traffic Goats, Osterrieder, and Jongejan, as well as communications amongst Popular Marketing, Osterrieder, and Jongejan, show Defendants willfully using Amazon's trademarks as part of their campaigns (e.g., Jongejan providing a stylized Amazon trademark to Traffic Goats).  They also show Defendants monitoring the traffic they received from the affiliate networks.

47.     Defendants use Amazon's brand on their websites to entice victims to click through the survey—which is how Defendants earn money from this scheme. Amazon's brand helps legitimize Defendants' surveys and increases the likelihood that victims will click the links in the phony emails.

48.     When a victim first arrives on Defendants' survey page, the victim sees a greeting that addresses the victim as "Amazon Shopper."  The message invites the victim to complete a survey "about your experiences with Amazon" in order to get "access to several carefully selected reward offers **(worth at least $80)**" (emphasis in original).  A screenshot of one of Defendants' greeting messages is below:

15



After clicking "Start Survey Now," victims are presented with a survey page that contains a header using Amazon's trademark and the words "Shopper Survey." Defendants also often intentionally mimic Amazon's designs and color schemes, including Amazon's navy blue banner heading and gold rectangular buttons to indicate options victims can select.

49.     Defendants' survey page leads victims through a series of questions that further deceive victims into believing the survey originates with or is sponsored by Amazon.

50.     Defendants' survey asks questions about shopping on Amazon such as, "When was the last time you bought a product from Amazon?"; "How would you rate your experience shopping online with Amazon?"; and "How often are the products you're looking for in stock?"  Defendants intentionally craft these questions to appear as though they are collecting information for Amazon.  A partial screenshot of one of Defendants' survey questions is below:



51.     Defendants' survey website is not affiliated with Amazon, the victims' responses are not provided to Amazon, and Defendants do not actually collect or use the responses.  Rather, the purpose of the survey is merely to cause victims to click through Defendants' website.

52.     Below Defendants' survey questions in at least one version of their survey is a message that states the website is "not affiliated with or endorsed by Amazon" and that Defendants do not have a right to use the trademarks.  This disclaimer is in substantially smaller font than is used on the rest of the website.

53.     The inclusion of this language demonstrates Defendants' knowledge of Amazon's exclusive right to use the Amazon Trademarks, and admits that Defendants lack any right or authority to use them.  This purported disclaimer also demonstrates that Defendants' design, display, and use of the Amazon Trademarks on their survey page is intentional and willful.

54.     Notwithstanding Defendants' ineffective disclaimer, the rest of the survey page is expressly designed and intended to give victims the false impression that it originates with, is affiliated with, or is sponsored by Amazon.  It is also intentionally designed to deceive victims into believing that completing the survey will lead to a reward.

### 4.     Defendants Send Victims Who Complete the "Survey" to Affiliate Networks and Advertisers

55.     Upon completing the survey, victims are presented with a "Thank you" message for "completing the survey."  Among other things, the message deceptively states, "With sincere thanks, you may now choose **(1)** of the following exclusive offer rewards below" (emphasis in original).  The message also states,

"All coupons have been applied for reduced shipping costs."  As explained above,

however, Defendants do not record any victim's answers, and the "exclusive offer

rewards" or "coupons" are nonexistent.

56.    The rewards page displays numerous products that are intentionally

designed to appear as Amazon product listings.  Defendants present these products

as free or heavily discounted "offers."  A partial screenshot of one version of this

page is below:



57.    None of the offers contained on Defendants' rewards page is endorsed

by Amazon.

58.     Similar to what happens after a victim clicked the link in the phony emails, clicking one of Defendants' "reward" links sends the victim through a series of redirect domains.

59.     Victims are first redirected to the domain loadzucchetto.com, which is controlled by Defendants.

60.     From loadzucchetto.com, victims are redirected to nsxrenkz.com, another domain controlled by Defendants, and then further redirected through various domains controlled by affiliate networks.  Each affiliate network then redirects each victim to an advertiser where victims can "purchase" the product they selected on Defendants' "reward" page.

61.     On information and belief, these affiliate networks pay Defendants for the traffic Defendants refer to them.  Two affiliate networks Defendants direct traffic to are Express Revenue, Inc. and Clickbooth.com, LLC.

## V.     CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## Trademark Infringement (15 U.S.C. § 1114)

62.     Amazon incorporates by reference the factual allegations contained in Sections I–IV as though set forth herein.

63.     Defendants' activities infringe the Amazon Trademarks.

64.     Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and it uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

65.     Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, users, and the public to signify, products and services from Amazon.

66.     Defendants use the Amazon Trademarks in commerce in a manner that is likely to cause confusion, mistake, or deception as to the source, origin, or authenticity of their website.

67.     Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that Defendants' website originates with or is authorized by Amazon, thereby harming Amazon and the public.

68.     At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, their authority to use the Amazon Trademarks and the confusion that the use of those trademarks would have on consumers as to the source, sponsorship, affiliation or approval by Amazon of Defendants' website.

69.     Defendants are subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including

21

without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

70.     As a result of Defendants' wrongful conduct, Amazon is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b).  The amount of money due from Defendants to Amazon is unknown to Amazon and cannot be ascertained without a detailed accounting by Defendants.  Alternatively, Amazon is entitled to statutory damages under 15 U.S.C. § 1117(c).

71.     Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Amazon has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Amazon Trademarks are unique and valuable property; (b) Defendants' infringement constitutes harm to Amazon's reputation and goodwill such that Amazon could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the infringing websites; and (d) Defendants' wrongful conduct, and the resulting harm to Amazon, is continuing.

## SECOND CAUSE OF ACTION

**False Designation of Origin, Sponsorship, Approval, or Association and False Advertising (15 U.S.C. § 1125(a))**

72.     Amazon incorporates by reference the factual allegations contained in Sections I–IV as though set forth herein.

73.     Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and it uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

74.     Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, end users, and the public to signify, products and services from Amazon.

75.     Amazon has also designed distinctive displays, logos, icons, and graphic images (collectively, "Amazon designs") for its websites.

76.     Defendants' wrongful conduct includes the use of the Amazon Trademarks, imitation designs (specifically displays, logos, icons, and/or graphic designs virtually indistinguishable from the Amazon designs), and false or misleading description or representation of fact in connection with Defendants' commercial marketing activities.

77.     Defendants' activities deceive consumers.  On information and belief, Defendants' wrongful conduct misleads and confuses users and the public as to the origin and authenticity of the goods and services advertised, marketed, offered or distributed in connection with Amazon's trademarks, name, and imitation visual designs, and wrongfully trades upon Amazon's goodwill and business reputation.

78.     Defendants' acts constitute willful false statements in connection with goods and/or services distributed in interstate commerce, in violation of 15 U.S.C. § 1125(a).

79.     Defendants are subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

80.     Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Defendants' acts have caused irreparable injury to Amazon.  The injury to Amazon is and continues to be ongoing and irreparable. An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

81.     As a result of Defendants' wrongful conduct, Amazon is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney

24

fees pursuant to 15 U.S.C. § 1117(a)–(b).  The amount of money due from

Defendants to Amazon is unknown to Amazon and cannot be ascertained without a

detailed accounting by Defendants.

### THIRD CAUSE OF ACTION

### Trademark Dilution (15 U.S.C. § 1125(c))

82.     Amazon incorporates by reference the factual allegations contained in

Sections I–IV as though set forth herein.

83.     Amazon has exclusively and continuously promoted and used the

Amazon Trademarks.  As one of the world's most well-known technology

companies, the Amazon Trademarks have become famous, distinctive and well-

known symbols of Amazon—well before the Defendants began using the Amazon

Trademarks in association with their goods or services unaffiliated with Amazon

through the Defendants' illegal use and infringement of the Amazon Trademarks.

84.     The actions of the Defendants including, but not limited to, their

unauthorized use of the Amazon Trademarks in commerce to deceive users into

believing Defendants' websites are affiliated with Amazon are likely to cause

dilution of the Amazon Trademarks by blurring and tarnishment in violation of 15

U.S.C. § 1125(c).

85.     As a result of Defendants' willful conduct, Amazon is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a).

86.     Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Defendants' acts have caused irreparable injury to Amazon.  The injury to Amazon is and continues to be ongoing and irreparable. An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Amazon respectfully prays for the following relief:

A.     That the Court enter judgment in Amazon's favor on all claims;

B.     That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, employees, successors and assigns, and all others in active concert or participation with them, from:

(i)     Using the Amazon Trademarks in connection with any offer, survey, commercial email, marketing campaign, or website;

(ii)    Using any other indication of Amazon's brand in connection with any offer, survey, commercial email, marketing campaign, or website;

      (iii)   Making any statement of an affiliation or connection to Amazon in connection with any offer, survey, commercial email, marketing campaign, or website; or

      (iv)   assisting, aiding or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (iii) above;

C.    That the Court enter an order requiring Defendants to provide Amazon a full and complete accounting of all gross and net amounts earned in connection with the scheme alleged in this Complaint;

D.    That Defendants' profits from the unlawful scheme alleged in this Complaint be disgorged pursuant to 15 U.S.C. § 1117(a);

E.    That Defendants be required to pay all general, special, actual, and statutory damages which Amazon has sustained, or will sustain, as a consequence of Defendants' unlawful acts, and that such damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117(a)–(b), or otherwise allowed by law;

F.    That Defendants be required to pay the costs of this action and Amazon's reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117 or otherwise by law; and

That the Court grant Amazon such other, further, and additional relief as the

Court deems just and equitable.

DATED: June 1, 2020          BAKER WILLIAMS MATTHIESEN LLP

By *s/John C. Rawls*
John C. Rawls, Texas Bar No. 24060930
  Attorney-in-charge
  Email: rocky@bwmtx.com
Sarah Silbert (*pro hac vice forthcoming*)
  Of Counsel
  Email: sarah@bwmtx.com
5005 Woodway Dr., Suite 201
Houston, Texas 77056
Phone: (713) 888-3535
Fax: (713) 888-3550

DAVIS WRIGHT TREMAINE LLP

Bonnie E. MacNaughton (*pro hac vice forthcoming*)
  Of Counsel
  Email: bonniemacnaughton@dwt.com
Sara A. Fairchild (*pro hac vice forthcoming*)
  Of Counsel
  Email: sarafairchild@dwt.com
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Phone:  (206) 622-3150
Fax: (206) 757-7700

Meagan Himes (*pro hac vice forthcoming*)
  Of Counsel
  meaganhimes@dwt.com
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201
Phone:  (503) 241-2300
Fax:  (503) 778-5299

*Attorneys for Plaintiff Amazon.com, Inc.*

28